United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LYNETTA MARIE WARD,

       Plaintiff,

   v.

NANCY BERRYHILL, ACTING

COMMISSIONER SOCIAL SECURITY,

      Defendant

Case No. 16-cv-05323-JSC

ORDER RE: PARTIES' CROSS-MOTIONS
FOR SUMMARY JUDGMENT

Re: Docket Nos. 15, 20

Plaintiff Lynetta Ward ("Plaintiff") seeks social security benefits for a combination of
impairments, including: posttraumatic stress disorder, depression, and anxiety. (Administrative
Record ("AR") 351.) Pursuant to 42 U.S.C. § 405(g), Plaintiff filed this lawsuit for judicial
review of the final decision by the Commissioner of Social Security ("Commissioner") denying
her benefits claim. Now before the Court are Plaintiff's and Defendant's Motions for Summary
Judgment. (Dkt. Nos. 15 & 20.) Because the Administrative Law Judge ("ALJ") improperly
weighed the medical evidence, failed to provide legally sufficient reasons for finding that Plaintiff
did not meet the severity requirements of Step Two and did not meet or equal a listing at Step
Three, and erred in her credibility determination of Plaintiff, the Court GRANTS Plaintiff's
motion for summary judgment, DENIES Defendant's cross-motion, and remands for further
proceedings.

**PROCEDURAL HISTORY**

On June 28, 2012, Plaintiff filed for Supplemental Security Income under Title XVI of the
Social Security Act with an initial onset date of December 31, 2011. (AR 75.) On June 20, 2013,

the Social Security Administration (SSA) denied Plaintiff's claim for Supplemental Security Income. (AR 139.) Plaintiff claimed she was unable to work because of mental depression, seeing things, and ganglion cysts. (*Id*.) The SSA concluded that Plaintiff's blood pressure had not resulted in any severe complications and her other conditions were not severe enough to prevent Plaintiff from working. (*Id*.) At Plaintiff's request for reconsideration, the SSA affirmed its earlier finding on November 21, 2013. (AR 149.) Plaintiff filed a request for hearing on December 6, 2013. (AR 154.) She appeared before ALJ Nancy Lisewski on December 8, 2014. (AR 178.) On February 25, 2015, the ALJ affirmed the SSA's decision. (AR 20.) Plaintiff filed a request for a review of the hearing decision order with the Appeals Council on April 17, 2015. (AR 14.) Her request for a review of the Appeals Council was denied on July 21, 2016. (AR 1.) On November 28, 2016, Plaintiff filed the instant action. (Dkt. No. 1.)

## FACTUAL BACKGROUND

### A. Medical Evidence

Plaintiff Lynetta Marie Ward was born in Martinez, California on October 28, 1959 and was raised in Oakland, CA. (AR 483.) She lived with her grandmother until she was five years old, at which point she began living with her mother. (*Id.*) She did not have a good relationship with her mother and experienced significant trauma growing up, including sexual abuse and racial harassment. (*Id.*) Plaintiff has ongoing symptoms related to posttraumatic stress disorder, depression, and anxiety. (AR 490.) Several physicians examined Plaintiff's mental functioning and physical capacity.

a. *Dr. Kyle Van Gaasbeek* (Consultative Examination Psychiatrist)

In his June 7, 2013 comprehensive psychiatric evaluation, Dr. Gaasbeek recorded a diagnosis of Major Depressive Disorder with severe psychotic features. (AR 390.) Dr. Gaasbeek noted that Plaintiff's thoughts were tangential, and she was difficult to redirect. (*Id*.) Her thoughts were notable for auditory hallucinations of deceased family members. (*Id*.) Her memory was reduced. (*Id*.) After several minutes, Plaintiff could not recall two thirds of the objects identified minutes earlier. (*Id*.) Dr. Gaasbeek reported that Plaintiff's depression is treatable and, based on her history, her symptoms will likely go into remission but she will remain

1  vulnerable to future recurrences of depression.  (AR 390.)  He concluded that her ability to

2  perform simple and repetitive tasks and accept instructions from supervisors is unimpaired.  (AR

3  391.)  Dr. Gaasbeek, however, also concluded that Plaintiff's ability to complete a normal

4  workday without interruptions from a psychiatric condition is mild to moderately impaired, as

5  well as her ability to deal with the usual stress encountered in the workplace.  (AR 391.)

6          b.    *Dr. Thomas Phillips* (Physical Consultative Exam Physician)

7          On April 17, 2013, Dr. Thomas Phillips conducted a consultative medical exam.  (AR 79.)

8  Dr. Phillips diagnosed Plaintiff with hypertension.  (*Id.*)  Dr. Phillips observed that Plaintiff drinks

9  three to four 16 ounce cans of beer and smokes a half pack of cigarettes daily.  (*Id.*)  With respect

10  to Plaintiff's mental functioning, Dr. Phillips reported that Plaintiff had no history of psychiatric

11  hospitalization and is not taking any psychotropic medications.  (*Id.*)  Plaintiff reported depression

12  since 2006 and some hallucinations of deceased family members.  (*Id.*)  The physician noted that

13  Plaintiff was raped at 14 years old.  (*Id.*)  Dr. Phillips acknowledged Plaintiff's history with Major

14  Depressive Disorder, severe with psychotic features.  (*Id.*)  Dr. Phillips concluded that Plaintiff

15  had non severe physical impairments and severe affective disorder.  (*Id.*)

16          c.    *Dr. Richard Luck* (Non-Examining Physician)

17          On June 18, 2013, Dr. Richard Luck found that Plaintiff has mild to moderate difficulties

18  associated with Major Depressive Disorder, along with a history of drug dependence in the 1980s.

19  (AR 82.)  Dr. Luck concluded that Plaintiff has a history of depression but noted that Plaintiff was

20  only partially credible because her allegations of visual and auditory hallucinations are not fully

21  substantiated by medical evidence.  (AR 83.)  Dr. Luck found Plaintiff was not disabled because

22  her only symptom was hypertension, which had not resulted in any severe complications.

23  Notwithstanding her depression, Dr. Luck concluded that she is able to perform daily activities

24  without severe limitations.  (AR 88.)

25          d.    *Drs. Morgan and Barrons* (Non-Examining Physicians)

26          Dr. Morgan reviewed Plaintiff's medical files on November 7, 2013 and concluded that

27  Plaintiff's physical impairment of hypertension was non severe and that her affective disorder was

28  severe.  (AR 120.)  On November 20, 2013, Dr. Barrons agreed with this assessment and

concluded that Plaintiff's "condition results in some limitations" in Plaintiff's ability to perform work related activities, but overall, the physician concluded that Plaintiff "can adjust to other work." (*Id.*)

        e.    *Dr. Lesleigh Franklin* (Examining Physician)

In her November 22, 2014 Psychological Report, Dr. Franklin found that the Beck Depression Inventory and Beck Anxiety Inventory yielded results of severe depression and severe anxiety. (AR 486.) Plaintiff was interviewed and administered several psychological exams within a three-hour session. (*Id.*) Dr. Franklin noted that Plaintiff was focused and put forth a good effort during the assessments; thus, the assessments should be considered a good measure of her current psychological, cognitive, and personality functioning. (*Id.*) On the intellectual functioning WASI-II exam, Plaintiff placed within the Low Average range. (AR 487.) Plaintiff took a series of tests designed to measure her cognitive functioning. Based on these tests, Dr. Franklin concluded that Plaintiff exhibited no significant difficulties with attention span, but her executive functioning (planning, sequencing, abstracting) fell well below average. (AR 488.) Plaintiff's overall cognitive scores placed her in the average range of neurocognitive functioning, and she demonstrated significant strengths in delayed memory and language abilities. (*Id.*)

In the physician's evaluation of Plaintiff's emotional functioning, she found that Plaintiff had ongoing symptoms of posttraumatic stress, depression, and anxiety. (AR 490.) Dr. Franklin reported that there were concerns with Plaintiff's ability to discern differences between "the internal and external worlds" due to her hallucinations. (*Id.*) Dr. Franklin diagnosed Plaintiff with schizoaffective disorder, posttraumatic stress disorder, and unspecified anxiety disorder. (AR 491.) Dr. Franklin concluded that "in the workplace, Ms. Ward would likely have extreme difficulties with maintaining a regular schedule, coping with excessive environmental stimuli, and with interpersonal relationships...her capabilities in securing stable employment and financially supporting herself are very much impaired." (AR 492.)

        f.    *Gino Inesi* (Examining Therapist)

In a June 6, 2012 Mental Health Clinician's Report, Gino Inesi diagnosed Plaintiff with depression with psychotic features. (AR 441.) He reported that Plaintiff's mental health

condition prevents her from working and has existed for 12 months or more. (AR 440.) Inesi found "marked limitations relative to [Plaintiff's] ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (*Id.*)

g.     *Sausal Creek Outpatient Stabilization Clinic*

A December 2006 outpatient report from Sausal Creek Outpatient Stabilization Clinic diagnosed Plaintiff with Psychosis and Polysubstance abuse. (AR 430.) It described her thought process as tangential and her thought content as paranoia and hallucination. (*Id.*)

h.     *Lifelong Medical Clinic*

From August 13, 2014 to November 24, 2014, Plaintiff regularly visited Lifelong Clinic and reported symptoms of depression and anxiety, including guilty feelings, feelings of worthlessness, changes in appetite, low energy, difficulty concentrating, tearfulness, visual hallucinations, auditory hallucinations, poor sleep and irritability. (AR 495-504.)

**B.     The ALJ Hearing**

On December 8, 2014, Plaintiff appeared with counsel at her scheduled hearing before ALJ Nancy Lisewski in Oakland, California. (AR 44.) Plaintiff and Vocational Expert ("VE") Joel Greenberg both testified at the hearing. (*Id.*)

a.     *Plaintiff's testimony*

Plaintiff's testimony at the ALJ hearing mostly focused on her mental state and physical abilities. Plaintiff last worked in 2006 when she was a cashier for Long John Silver's in San Antonio, Texas. (AR 47.) She is now homeless and periodically stays in a shared room at a single resident occupancy hotel. (AR 46-47.) She pays for the hotel until her General Assistance money runs out and then sleeps in the car for the rest of the month. (AR 51.) She does laundry once a month and grocery shopping once a week. (AR 65.)

Plaintiff has been hearing voices since 2004. (AR 49.) Every few weeks, she hears voices from her grandmother, mother, and son. (AR 48 49.) Since 2007, she has also been seeing visions of a mouse, roach, her mother, and grandmother. (AR 49, 53.)

Plaintiff has been feeling depressed since 2005. (AR 53.) She lacks an appetite and

regularly goes several days without eating. (AR 55.) She has problems sleeping and difficulty concentrating. (AR 47, 56.) She can only concentrate on a particular task for five to ten minutes. (AR 57, 67.) She isolates herself and talks to friends approximately once every three months. (AR 66.)

Plaintiff has a history of abuse. When she was nine, her neighbor's father molested her. (AR 57.) At 12 years old, she was raped by her neighbor. (*Id*.) In her twenties, she was raped again. (*Id*.) In her thirties, she was hit in the head with a gun during an attempted robbery. (AR 58.)

Plaintiff has high blood pressure and has been taking medication for hypertension since 2005. (AR 53, 54.) She has ganglion cysts on her arm and thighs. (AR 62.) She requires breaks after five to ten minutes of walking. (AR 68.) She has flat feet and trouble standing for more than ten to fifteen minutes, difficulty lifting or carrying heavy items, and shoulder pain from a car accident in 2001. (AR 69,70.)

b.    *Vocational Expert's Testimony*

Vocational Expert ("VE") Joel Greenberg, who reviewed Plaintiff's file and was present for Plaintiff's testimony, testified to the classifications of Plaintiff's vocational history, identified the exertional and skill levels of those jobs, and ultimately provided testimony as to whether Plaintiff could perform that past relevant work.

The VE testified that from 1995 to 1998, Plaintiff was a homecare giver at a group home, and from 2000 to 2003, Plaintiff was a private homecare giver. (AR 71.) In this position, the exertional level was heavy given the size and weight of the patients. (*Id*.) The VE classified Plaintiff as a fast food cashier from June 2004 to 2006, which required a light exertional level. (*Id*.)

The ALJ posed two hypotheticals to the VE to determine whether there were jobs existing in significant numbers in the national economy that Plaintiff could perform given her impairments. First, the ALJ asked if Plaintiff's past work is available for an individual limited to medium, simple, routine, and low stress work. (AR 71.) The VE responded that a fast food cashier would fit the hypothetical because it's a lower exertional level but the caregiver position would not. (AR

72.)  The VE added that the jobs of janitor, hand packager, and order filler are available as positions with low exertional levels.  (*Id*.)

In the second hypothetical, the ALJ asked whether there would be any work available if a person was unable to complete a normal workday and work week without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods.  (AR 73.)  The VE responded that "[t]his person would be unemployable, in my opinion."  (*Id*.)

Plaintiff's attorney asked the VE what if the person in hypothetical one had no ability to respond appropriately to changes in the work setting.  The VE responded that the person would not "be lasting in that job too long."  (*Id*.)  Plaintiff's attorney next asked what if the person in hypothetical one had a 15% reduction in their ability to maintain attention for two hour segments or more.  The VE responded that restriction would be "work preclusive."  (AR 74.)

### C.     The ALJ's Findings

In a February 25, 2015 written decision, the ALJ found Plaintiff not disabled under Sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act, taking into consideration the testimony and evidence, and using the SSA's five-step sequential evaluation process for determining disability.  (AR 21.)  First, the ALJ concluded that Plaintiff did not have a disabling impairment or combination of impairments on or prior to date last insured.  The ALJ also found insufficient evidence to establish the existence of a disabling impairment or combination of impairments subsequent to date last insured.  (AR 22.)

With respect to the five-step evaluation process, first, the ALJ found that Plaintiff has not engaged in any substantial work related activity since the alleged date of onset on December 31, 2011.  (AR 23.)  Second, the ALJ found that Plaintiff has major depressive disorder and polysubstance dependence that more than minimally restricts the Plaintiff's ability to perform basic mental work-related functions.  (AR 24.)  The ALJ concluded that the Plaintiff's hypertension and history of ganglion cysts are nonsevere impairments.  (AR 23.)  The ALJ considered evidence from DDS medical consultant Dr. Philips, who concluded that hypertension was a nonsevere impairment both before and after the date last insured.  (*Id*.)  The ganglion cysts

had never resulted in significant symptomatology. (*Id.*) The ALJ also considered evidence from Dr. Morgan, who found Plaintiff's physical medical status to be nonsevere relative to the Title XVI claim, with insufficient evidence to assess her physical medical status relative to her Title II claim. (*Id.*) The ALJ gave "significant evidentiary weight to these doctors because the physicians either personally physically examined the Plaintiff or fully reviewed her medical record." (AR 24.)

Second, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments set forth in 20 CFR Part 404, Subpart P, Appendix 1. The ALJ specifically focused on the listing sections related to mental disorders, including section 12.04 (affective mood disorders) and section 12.09 (substance addiction disorders). (*Id.*) In finding that Plaintiff's mental impairments have not either singly or in combination met or medically equaled the criteria of the listing section, the ALJ found that the mental impairments did not result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. (*Id.*)

The ALJ noted that there were no findings related to any medical disorder, based on diagnostic, clinical, or physical and mental status evaluations, including reports of laboratory tests and diagnostic imaging. (*Id.*) The ALJ also found that no evaluating, examining, or treating physician or medical provider has reported credible findings since the alleged onset date. (AR 25.) Thus, the ALJ gave significant weight to the findings of psychological consultative examiner Dr. Gaasbeek and DDS medical consultants Drs. Luck and Barrons, who concluded that the Plaintiff does not meet or equal the criteria of any physical or mental Listing section. (*Id.*) The ALJ found these physicians' reports consistent with each other, particularly given that there was no significant credible evidence in the record to rebut their consistent findings. (*Id.*)

At step three, the ALJ found that Plaintiff has the physical exertional and nonexertional residual functional capacity to perform a full range of medium work, as defined on a function by function basis. (AR 26.) Relative to the Plaintiff's mental residual functional capacity, the ALJ

found that she is restricted to the performance of unskilled simple and routine job tasks of a low stress nature. (*Id.*) The ALJ considered Plaintiff's testimony at the hearing on December 8, 2014 and the medical record in concluding that the evidence does not substantiate the existence of a severe physical medical impairment. (AR 27.) The ALJ gave significant weight to the medical analysis and functional assessment of DDS medical consultants Drs. Philips and Morgan, who both concluded that the claimant's physical and medical status was "non-severe." (AR 28.) Both physicians concluded that the only diagnosed medical disorder in the record was hypertension. (*Id.*) The ALJ also noted Plaintiff's own testimony contained little discussion of her physical medical status. (*Id.*)

With respect to Plaintiff's mental status, the ALJ gave primary weight to the psychological evaluation performed by Dr. Gaasbeek on June 7, 2013. (*Id.*) Dr. Gaasbeek diagnosed Plaintiff with major depressive disorder but concluded that Plaintiff's depression was treatable, and Plaintiff's ability to perform simple and repetitive tasks was unimpaired. (AR 29.) The ALJ also found that the assessments of DDS medical consultants Drs. Luck and Barrons, and the progress notes from Lifelong Medical Care corroborated Dr. Gaasbeek's findings. (*Id.*)

The ALJ gave no weight to outpatient progress notes from Sausal Creek Stablization Clinic because the notes were from 2006, five years before the Plaintiff's alleged onset date of disability on December 31, 2011. (*Id.*)

The ALJ gave no weight to Plaintiff's therapist Gino Inesi, who claimed that Plaintiff was disabled and had marked limitations in her ability to complete a normal workday without psychologically-based symptoms. (AR 30.) The ALJ found that the therapist's assessment was entirely "conclusory" with no clinical findings or underlying treatment document and not credible, given inconsistencies in the assessment. (*Id.*) The ALJ also noted that the therapist is not an approved medical source. (AR 30.) The ALJ gave no weight to the psychological report prepared by Dr. Franklin on November 22, 2014, who concluded that Plaintiff would have poor ability to maintain a regular schedule, maintain regular attendance, and complete a normal workday. (AR 31). The ALJ found Dr. Franklin's findings to be indicative of "possible malingering" and full of "multiple inconsistent accounts" of Plaintiff's drug and alcohol use. (*Id.*) Lastly, the ALJ found

1   Plaintiff's testimony lacked credibility because of inconsistent statements to Dr. Gaasbeek.  (AR

2   32.)  The ALJ also concluded that Plaintiff continues to exacerbate the level of her own mental

3   symptomatology through the continued use of alcohol, marijuana, and cocaine.  (*Id*.)

4        At the fifth step, the ALJ found that Plaintiff is able to perform past relevant work.  (AR

5   34.)  The ALJ gave significant weight to the testimony of the vocational expert, who stated that

6   Plaintiff would be capable of performing the unskilled light duties of a fast food cashier.  (AR 33.)

7   The ALJ also considered Plaintiff's functional capacity, age, education, and work experience and

8   concluded that there are alternative jobs in the national economy available to Plaintiff, such as

9   hand packager and order filler.  (AR 35.)

10                                  **LEGAL STANDARD**

11       A claimant is considered "disabled" under the Social Security Act if she meets two

12  requirements.  *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

13  First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by

14  reason of any medically determinable physical or mental impairment which can be expected to

15  result in death or which has lasted or can be expected to last for a continuous period of not less

16  than 12 months."  42 U.S.C. § 423(d)(1)(A).  Second, the impairment or impairments must be

17  severe enough that she is unable to do her previous work and cannot, based on her age, education,

18  and work experience "engage in any other kind of substantial gainful work which exists in the

19  national economy."  42 U.S.C. § 423(d)(2)(A).  To determine whether a claimant is disabled, an

20  ALJ is required to employ a five-step sequential analysis, examining:

21          (1) whether the claimant is "doing substantial gainful activity"; (2) whether the
22          claimant has a "severe medically determinable physical or mental impairment" or
            combination of impairments that has lasted for more than 12 months; (3) whether
23          the impairment "meets or equals" one of the listings in the regulations; (4) whether,
            given the claimant's "residual functional capacity," the claimant can still do his or
24          her "past relevant work"; and (5) whether the claimant "can make an adjustment to
            other work."
25
26  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012); *see* 20 C.F.R. §§ 404.1520(a),

27  416.920(a).

28                                  **STANDARD OF REVIEW**

                                              10

Pursuant to 42 U.S.C. § 405(g), the Court has authority to review an ALJ's decision to deny benefits. When exercising this authority, however, the "Social Security Administration's disability determination should be upheld unless it contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). The Ninth Circuit defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"; it is "more than a mere scintilla, but may be less than a preponderance." *Molina,* 674 F.3d at 1110–11 (internal citations and quotation marks omitted). To determine whether the ALJ's decision is supported by substantial evidence, the reviewing court "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (internal citations and quotation marks omitted); *see also Andrews*, 53 F.3d at 1039 ("To determine whether substantial evidence supports the ALJ's decision, we review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.").

Determinations of credibility, resolution of conflicts in medical testimony and all other ambiguities are roles reserved for the ALJ. *See Andrews*, 53 F.3d at 1039. "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (internal citations and quotation marks omitted); *see also Batson v. Comm'r*, 359 F.3d 1190, 1198 (9th Cir. 2004) ("When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion."). "The court may not engage in second-guessing." *Tommasetti*, 533 F.3d at 1039. "It is immaterial that the evidence would support a finding contrary to that reached by the Commissioner; the Commissioner's determination as to a factual matter will stand if supported by substantial evidence because it is the Commissioner's job, not the Court's, to resolve conflicts in the evidence." *Bertrand v. Astrue*, No. 08–CV–00147–BAK, 2009 WL 3112321, at *4 (E.D. Cal. Sept. 23, 2009).

**DISCUSSION**

Plaintiff challenges four aspects of the ALJ's decision: (1) the ALJ erred in evaluating the medical opinions; (2) the ALJ erred by finding that the claimant's mental health impairments were

not severe; (3) the ALJ erred in finding Plaintiff does not meet or equal a listing; (4) the ALJ erred in her determination of Plaintiff's RFC that she could perform past relevant work or any work; and (5) the ALJ erred in evaluating Plaintiff's credibility.

**1.      The ALJ's Consideration of the Medical Evidence**

Plaintiff challenges the ALJ's consideration of the medical evidence and claims that the ALJ erred in evaluating the medical opinions.

**A.      The Standard for Weighing Medical Evidence**

As a threshold matter, the ALJ must consider all medical opinion evidence. *Tommasetti*, 533 F.3d at 1041 (citing 20 C.F.R. § 404.1527(b)). In conjunction with the relevant regulations, the Ninth Circuit has "developed standards that guide [its] analysis of an ALJ's weighing of medical evidence." *Ryan v. Comm'r of Soc. Sec. Admin*., 528 F.3d 1194, 1198 (9th Cir. 2008). Specifically, a reviewing court must "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The opinion of each is accorded a different level of deference, as "the opinion of a treating physician is ... entitled to greater weight than that of an examining physician, [and] the opinion of an examining physician is entitled to greater weight than that of a non-examining physician." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014); *see also Orn*, 495 F.3d at 631 ("Generally, the opinions of examining physicians are afforded more weight than those of non-examining physicians, and the opinions of examining non-treating physicians are afforded less weight than those of treating physicians." (citing 20 C.F.R. § 404.1527(d)(1)–(2))). Courts afford medical opinions of a treating physician superior weight because these physicians are in a special position to know plaintiffs as individuals and the continuity of the treatment improves their ability to understand and assess an individual's medical concerns. *See Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988); *see also Morgan v. C omm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) ("The opinion of a treating physician is given deference because 'he is employed to cure and has a greater opportunity to know and observe the patient as an individual." (citation omitted)). "However, the opinion of the

treating physician is not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Morgan*, 169 F.3d at 600 (citation omitted).

"If a treating physician's opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight.'" *Orn*, 495 F.3d at 631 (quoting 20 C.F.R. § 404.1527(d)(2)). If a treating physician's opinion is not given controlling weight because it is not "well-supported" or because it is inconsistent with other substantial evidence in the record, the ALJ must provide "specific and legitimate reasons that are supported by substantial evidence" for rejecting it, and in doing so, the ALJ must consider "specified factors in determining the weight it will be given" to the treating physician's opinion. *Ryan*, 528 F.3d at 1198 (internal citations and quotation marks omitted). "Those factors include the '[l]ength of the treatment relationship and the frequency of examination' by the treating physician; and the 'nature and extent of the treatment relationship' between the patient and the treating physician." *Id*. (citing 20 C.F.R. § 404.1527(d)(2)(i)–(ii)).

Opinions of non-examining doctors alone cannot provide substantial evidence to justify rejecting either a treating or examining physician's opinion. *See Morgan*, 169 F.3d at 602. An ALJ may rely partially on the statements of non-examining doctors to the extent that independent evidence in the record supports those statements. *Id.* Moreover, the "weight afforded a non-examining physician's testimony depends 'on the degree to which they provide supporting explanations for their opinions.'" *See Ryan*, 528 F.3d at 1201 (quoting 20 C.F.R. § 404.1527(d)(3)).

At bottom, to meet its burden of providing specific and legitimate reasons to reject a treating physician's opinion, the ALJ must "set[ ] out a detailed and thorough summary of the facts and conflicting medical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986). In contrast, "[w]hen an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs. In other words, an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without

explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison*, 759 F.3d at 1012–13 (internal citation omitted).

      **1.**       **The ALJ erred in evaluating the medical evidence**

            i.      *Examining psychologist Dr. Franklin*

Plaintiff contends that the ALJ erred by assigning little weight to the opinion of examining psychologist Dr. Franklin without providing specific and legitimate reasons supported by substantiated evidence. The Court agrees.

"[T]he opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (internal citation omitted). "This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be entitled to the greatest weight...even if it does not meet the test for controlling weight." *Garrison*, 759 F.3d at 1012 (internal citation and quotation omitted).

The ALJ did not describe how much weight she accorded Dr. Franklin; instead, she found the "conclusions of Dr. Franklin to be unsupported by the record as a whole including their own findings on examination." (AR 31.) The ALJ's characterization of Dr. Franklin's report as "inconsistent with the record as a whole" is not supported by substantial evidence. Dr. Franklin cites many symptoms that are consistent with the record, including difficulty concentrating, hallucinations, and sleep disturbances. Dr. Gaasbeek, another examining doctor to whom the ALJ gave great weight, also recorded that Plaintiff reported trouble sleeping, difficulty concentrating, and hallucinations and diagnosed her with depressive disorder. (AR 389-90.) The Sausal Creek Outpatient Stabilization clinic psychiatric assessment also confirmed Plaintiff's history of psychosis, difficulty concentrating, and insomnia. (AR 428-430.) The ALJ did not explain how Dr. Franklin's assessment was inconsistent with the record as a whole in light of this record evidence.

Further, the ALJ appeared to give as a reason for not crediting Dr. Franklin the fact that the M-FAST test was indicative of possible malingering. (AR 31.) But Dr. Franklin specifically

1    identified this finding, and explained that "Ms. Ward endorsed symptoms relating to her mood and

2    depressed symptoms and demonstrated some confusion on a number of the questions." (AR 489.)

3    The ALJ did not acknowledge this explanation of the test result, let alone explain why it is not

4    entitled to weight.

5          The ALJ also appeared to fault Dr. Franklin because the substance abuse Plaintiff reported

6    to Dr. Franklin was inconsistent with what she later reported. (AR 31.) But the ALJ ignored that

7    Dr. Franklin did not rely solely on Plaintiff's reporting; instead, she performed several tests. (AR

8    486-489.) Indeed, the ALJ assigned examining consultant Dr. Gaasbeek great weight, but Dr.

9    Gaasbeek neglected to list the types of tests he performed beyond asking Plaintiff basic math

10   problems. (AR 390.) By contrast, Dr. Franklin's report is a comprehensive analysis of Plaintiff's

11   mental capabilities and describes the series of tests administered to assess her intellectual,

12   cognitive, and emotional functioning. (AR 486-89.) The ALJ provided no reasoning for giving

13   more weight to Dr. Gaasbeek's less detailed report. The ALJ, therefore, erred in discounting Dr.

14   Franklin's opinion. *See Garrison*, 759 F.3d at 1012–13.

15                 ii.        *Treating source Lifelong Medical Care*

16         The ALJ also erred by giving less weight to the treating source providers at Lifelong

17   Medical Care. (AR 30.) The ALJ did not specify how much weight she allocated to the reports

18   from Lifelong Medical. Instead, the ALJ stated, "I find that the claimant's current mental status is

19   essentially consistent with the prior mental status evaluation conducted by Dr. Gaasbeek, and the

20   prior consistent mental functional assessments of Dr. Gaasbeek, Luck, and Barrons." (AR 29-30.)

21   Yet, Drs. Luck and Barron are non-examining physicians and thus deserved less weight than the

22   treating physicians at Lifelong Medical. *See Garrison*, 759 F.3d at 1012–13.

23         In supporting her conclusion that the treating source medical records were consistent with

24   the findings of Drs. Gaasbeek, Luck, and Barrons, the ALJ stated that on January 26, 2011, "the

25   claimant's mental status was essentially normal." (AR 29.) Yet, this conclusion was based on a

26   report from Alameda Medical Center from Plaintiff's consultation regarding removal of her

27   ganglion cyst, and did not properly consider the Lifelong Medical examinations. (AR 376-77.)

28   The ALJ ignored evidence from Lifelong Medical that on October 27, 2014, treating physicians at

                                            15

Lifelong Medical reported that Plaintiff discussed a history of depression, auditory and visual hallucinations, and a history of sexual and physical assaults.  (AR 504.)  On November 10, 2014, treating physicians at Lifelong Medical reported that Plaintiff had a history of major depressive disorder, alcohol dependence, and cocaine use.  (AR 502.)  On November 24, 2014, treating physicians at Lifelong Medical found Plaintiff had chronic depression (AR 496) and "likely PTSD given history of trauma."  (AR 498.)  Plaintiff also reported drinking 3-4 beers a day, using cocaine twice a month, smoking 1/3 pack a day for about 40 year (AR 497), and smoking marijuana daily. (AR 508.)  The ALJ erred in not assigning greater weight to the reports of the treating physicians at Lifelong Medical and instead relying on the assessments of non-examining physicians Drs. Luck and Barron.  *See Garrison*, 759 F.3d at 1012–13.

### iii.    *Examining Therapist Gino Inesi*

Plaintiff claims that the ALJ "failed to provide specific and legitimate reasons supported by substantial evidence for granting no weight to the opinion of Gino Inesi." (Dkt No. 21 at 11.) The Court disagrees.  The ALJ provided three specific reasons for discarding Inesi's evaluation. First, she rejected it as "entirely conclusory, with no clinical findings from mental status evaluations or other underlying treatment documentation to support the findings noted above." (*Id*.)  The ALJ was correct that there is no underlying treatment documentation in support of Inesi's findings; Inesi's report consists of a two-page checklist with no discussion of underlying tests or the basis for Inesi's findings.  (AR 440-41.)  *See Molina*, 674 F.3d at 111-12 (The ALJ may "permissibly reject[]... check-off reports that [do] not contain any explanation for the bases of their conclusions") (internal citations and quotation marks omitted).

Second, the ALJ found the report was "fundamentally inconsistent."  (AR 30.)  Inesi marked "yes" to whether Plaintiff's "mental health condition prevent[s] her from working," and marked "N.A." to whether Plaintiff has "work restrictions related to [her] mental health condition."  (AR 30, 441.)  Plaintiff contends that there is no inconsistency because the question to which Inesi marked "N.A" states "If yes, please describe any other significant limitations," and Plaintiff argues that the checked boxes on the prior page constitute a description of these limitations.  (Dkt. No. 21 at 11.)

Plaintiff's interpretation of the form and its inconsistencies is unpersuasive. Inesi provided no explanation regarding whether the patient had work related restrictions related to her mental health. (AR 441.) The ALJ, therefore, was correct in finding the report "fundamentally inconsistent." (AR 30.) *See Young*, 803 F.2d 963, 967-68 (9th Cir. 1986) (Disregarding a doctor's report for internal inconsistencies because "[D]espite the fact that the [doctor's] report is the first and only time that [he] suggested that appellant was totally disabled, the report inexplicably lists appellant's condition as 'improved.'")

Finally, the ALJ commented that Inesi indicated that Plaintiff "has no history or problems with drugs or alcohol abuse, leading one to question how truthful [Plaintiff] has been to her therapist, as well as how familiar her therapist is with her overall medical record." (AR 30.) Plaintiff does not address this finding. The record is littered with references to Plaintiff's history of drug and alcohol use. (*See, e.g.,* AR 79, 127, 382, 485, 497.) The ALJ, therefore, reasonably gave no weight to Inesi's opinion because Inesi's form report demonstrates little awareness of Plaintiff's medical history and problems. *See* 20 C.F.R. § 404.1527(c)(6)("the extent to which an acceptable medical source is familiar with the other information in your case record [is a] relevant factor[] that we will consider in deciding the weight to give to a medical opinion.")

          iv.    *Consultative Examination Psychiatrist Dr. Gaasbeek*

The ALJ erred in granting Dr. Gaasbeek more weight than Dr. Franklin. The ALJ assigned the greatest weight to Dr. Gaasbeek's opinion because Dr. Gaasbeek performed an extensive mental examination of Plaintiff and is a specialist in psychology. (AR 29.)

"The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion." 20 C.F.R. § 404.1527(c)(3). Dr. Gaasbeek's report, however, contains no evidence of objective, comprehensive psychiatric testing. (AR 388.) By contrast, as discussed above, Dr. Franklin's report includes a comprehensive analysis of Plaintiff's mental capabilities and describes the series of tests administered to assess her intellectual, cognitive, and emotional functioning. (AR 486-89.) Moreover, the ALJ gave primary weight to Dr. Gaasbeek because he is a specialist in psychology, which is considered in weighing a medical opinion. 20 C.F.R. § 404.1527(c)(5).

17

1  Under this reasoning, however, Dr. Franklin, who is also a psychology specialist, should be

2  afforded the same weight.

3            v.    *Non-examining physicians Drs. Luck and Barron*

4        The ALJ erred in granting significant weight to the opinion of non-examining state agency

5  physicians Drs. Luck and Barrons. (AR 29.) "The opinions of non-treating or non-examining

6  physicians may also serve as substantial evidence when the opinions are consistent with

7  independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947,

8  957 (9th Cir. 2002).

9        The ALJ afforded these doctors significant weight based on the contention that the non-

10  examining physicians "fully reviewed the record...their findings are longitudinally consistent and

11  objectively supported" and that there is "no significant credible evidence in the record which

12  would rebut those findings." (AR 29.)

13        The state agency doctors' findings are not consistent with the record. Drs. Luck and

14  Barrons found that "there is no evidence that [Plaintiff] experiences visual hallucinations." (AR

15  83, 116.) However, Plaintiff's reports of visual hallucinations are repeatedly mentioned in the

16  record. The treating physician at Lifelong Medical reported that Plaintiff saw "shadowy images in

17  the corners of her eyes" and complained of "auditory and visual hallucinations." (AR 498, 501,

18  504.) Dr. Gaasbeek reported that Plaintiff has "auditory hallucinations of her deceased family

19  members." (AR 388.) Medical records form Alameda County Medical Center noted that Plaintiff

20  sees "green flashes" and "floaters in vision." (AR 437.) Medical records from Sausal Creek

21  Stabilization clinic also indicated "auditory hallucinations" and "visual hallucinations." (AR

22  428.) Thus, the state agency physicians' opinions are not consistent with the record, and there is

23  credible evidence that rebuts their findings.

24        Moreover, Drs. Luck and Barrons' assessments do not constitute a full review of the record

25  as they do not take Dr. Franklin's report into consideration. Dr. Luck provided his opinion on

26  June 18, 2013. (AR 76.) Dr. Barrons provided her opinion on November 20, 2013. (AR 115.)

27  Dr. Franklin's report was submitted on November 22, 2014. (AR 482.)

28        The ALJ thus erred in assigning significant weight to non-examining physicians Drs. Luck

and Barron without providing specific or legitimate reasons supported by substantial evidence.

### 2. Step Two: The ALJ's Determination that Plaintiff's Mental Impairments Are Not Severe

At step two, the ALJ erred in failing to inquire into the severity and listing levels of the Plaintiff's anxiety and schizophrenia. At the second step, the ALJ has to determine whether the claimant has a "severe medically determinable physical or mental impairment" or combination of impairments that has lasted for more than 12 months. 20 C.F.R. § 416.920(c). The step two inquiry for severity is intended to be a "de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d at 1290. "An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Id*. (internal quotation marks and citations omitted).

The ALJ found Plaintiff's severe impairments included major depressive disorder and polysubstance dependence. (AR 23.) The ALJ, however, neglected to inquire into Plaintiff's anxiety and schizophrenia. Dr. Franklin diagnosed Plaintiff with schizoaffective disorder, posttraumatic stress disorder, and unspecified anxiety disorder. (AR 491.) Given that the ALJ erred in devaluing Dr. Franklin's opinion, the ALJ was also incorrect in disregarding and not considering the severity of Plaintiff's schizoaffective disorder. Dr. Franklin found a DSM-V diagnosis of "295.70 Schizoaffective Disorder, Depressive Type, unspecified; 309.81 Posttraumatic Stress Disorder and 300 Unspecified Anxiety Disorder." (AR 491.) Dr. Franklin concluded that Plaintiff has "severe" impairments in her executive functioning and social functioning. (AR 493.) Moreover, records from the treating source, Lifelong Medical, support a finding that Plaintiff's schizophrenia and anxiety limit her mental capacity. Dr. Masters at Lifelong Medical found Plaintiff to be "depressed," seeing "shadowy images in the corners of her eyes," reporting "auditory and visual hallucinations." (AR 498, 501, 504.)

Dr. Gaasbeek also reported that Plaintiff has "auditory hallucinations of her deceased family members." (AR 388.) Medical records form Alameda County Medical Center additionally noted that Plaintiff sees "green flashes" and "floaters in vision." (AR 437.) Medical records from

19

Sausal Creek Stabalization clinic from 2006 also indicated "auditory hallucinations" and "visual hallucinations." (AR 428.) In light of this evidence, the ALJ erred in failing to even consider whether Plaintiff's schizoaffective disorder, posttraumatic stress disorder, and generalized anxiety disorder are severe. Instead, the ALJ referenced "multiple inconsistent accounts of the claimant's drug and alcohol use" to discredit the severity of Plaintiff's impairments. (AR 31.) The ALJ emphasized that on November 24, 2014, Plaintiff reported that she drinks 3-4 beers a day, uses marijuana, and uses cocaine twice a month, but Plaintiff reported to Dr. Franklin that she last used cocaine 20 years ago. (*Id.*) The inconsistencies related to Plaintiff's drug and alcohol use, however, do not undermine Dr. Franklin's diagnosis for schizoaffective disorder, posttraumatic stress disorder, and generalized anxiety disorder, which was based on several objective psychiatric assessments, including a Mini-Mental State Examination, Miller Forensic Assessment of Symptoms Test, Repeatable Battery for the Assessment of Neuropsychological Status, Wechsler Abbreviated Scale of Intelligence, Trail Making Test A and B, Beck Depression Inventory, and Beck Anxiety Inventory. (AR 482, 486-89.) Thus, Dr. Franklin's assessments provided an independent basis for the diagnoses, regardless of Plaintiff's accounts of drug and alcohol use, and the ALJ erred in not evaluating the severity of these disorders.

Defendant claims that "[a]lthough the ALJ specified that Plaintiff's severe mental impairments were depressive disorder and polysubstance dependence, the ALJ thoroughly considered her mental condition as a whole in assessing her RFC. Thus, any error not designating additional severe impairments was harmless." (Dkt. No. 20 at 6.) Yet, as the step two inquiry is intended to be "a de minimis screening device to dispose of groundless claims," the ALJ erred in not considering the substantial evidence relating to Plaintiff's schizoaffective disorder, posttraumatic stress disorder, and generalized anxiety disorder. *See Smolen*, 80 F.3d at 1290.

Although Plaintiff contends that the ALJ erred in finding that her ganglion cysts are not severe, substantial evidence supports the ALJ's conclusion. No doctor imposed any functional restrictions based on the cysts. (AR 376-79, 382-83, 389, 447, 450.) On May 17, 2013, Plaintiff had a follow-up appointment after her cyst was surgically removed at which she reported "feeling much better" with "no pain at the site." (AR 450.) The ALJ appropriately found Plaintiff's cysts

were a non-severe impairment.

**3.      Step Three: The ALJ's Determination That Plaintiff Does Not Meet a Listing**

Plaintiff also argues that the ALJ erred in finding Plaintiff's impairments, separately or in combination with other impairments, do not medically equal a listing.  "If a claimant has an impairment or combination of impairments that meets or equals a condition outlined in the 'Listing of Impairments,' then the claimant is presumed disabled at step three, and the ALJ need not make any specific finding as to his or her ability to perform past relevant work or any other jobs." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001) (citing 20 C.F.R. § 404.1520(d)).  "To equal a listed impairment, a claimant must establish symptoms, signs and laboratory findings at least equal in severity and duration to the characteristics of a relevant listed impairment, or, if a claimant's impairment is not listed, then to the listed impairment most like the claimant's impairment." *Tackett*, 180 F.3d at 1099 (internal quotations omitted) (emphasis in original); 20 C.F.R. § 404.1526.

The ALJ concluded that "the [Plaintiff's] mental impairments, although 'severe' in nature, have not either singly or in combination met or medically equaled the criteria of any appropriate listing section, including section 12.04 or 12.09."  (AR 25.)

The ALJ erred in neglecting to consider listings for 12.03 schizophrenic, paranoid, and other psychotic disorder and 12.06 anxiety related disorders.  With respect to 12.03, the Franklin report detailed Plaintiff's "auditory and visual hallucinations."  (AR 485.)  The Gaasbeek Report disclosed that Plaintiff has "auditory hallucinations of her deceased family members."  (AR 388.)  Medical records form Alameda County Medical Center additionally noted that Plaintiff sees "green flashes" and "floaters in vision." (AR 437.)  Medical records from Sausal Creek Stabalization clinic from 2006 indicated "auditory hallucinations" and "visual hallucinations."  (AR 428.)

With respect to 12.06 Anxiety Related disorders, Dr. Franklin described Plaintiff's symptoms as "restlessness, difficulty maintaining focus, not being able to relax, feeling nervous and scared, and most notably has fears of the worst happening, excessive nervousness, agitated and hyper-vigilant behaviors and frequent nightmares."  (AR 490.)  Dr. Franklin also wrote that

21

Plaintiff has "fears of dying." (AR 492.) Both Dr. Franklin and Dr. Masters of Lifelong Medical diagnosed Plaintiff with Posttraumatic Stress Disorder and Unspecified Anxiety Disorder (AR 491, 498, 502.) As the ALJ neglected to consider the severity of these diagnoses, it follows that the ALJ failed to continue to step three to consider whether they equal a listing.

### 4.     Step Four: The ALJ's Residual Functional Capacity (RFC) Determination

The "Medical-Vocational Guidelines" of the Social Security regulations define RFC as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(c). It is essentially a determination of what the claimant can still do despite her physical, mental, and other limitations. *See* 20 C.F.R. § 404.1545(a). "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including, *inter alia*, medical records, lay evidence, and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (internal citations and quotation marks omitted).

The ALJ found that Plaintiff has the "residual functional capacity to perform medium work...relative to the claimants mental residual functional capacity...she is restricted to the performance of unskilled simple and routine job tasks of a low stress nature, not involving quotas or other such measures of production." (AR 26). The RFC determination is incorrect because it fails to consider Dr. Franklin's opinion. In posing hypotheticals to the VE, the ALJ did not consider Plaintiff's schizophrenia, anxiety, and posttraumatic stress disorder. Thus, the hypotheticals may not be an accurate reflection of Plaintiff's limitations. *See Hill v. Astrue*, 698 F. 3d 1153, 1162 (9th Cir. 2012)("If a vocational expert's hypothetical does not reflect all of the limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy."). Accordingly, the RFC is not supported by substantial evidence.

### 5.     Plaintiff's credibility

#### i.     *The standard for assessing credibility*

The standard to determine whether a claimant's testimony is credible is different from the

22

standard used above for rejecting a physician's testimony that is *based* on a claimant's subjective complaints. To "determine whether a claimant's testimony regarding subjective pain or symptoms is credible," an ALJ must use a "two-step analysis." *Garrison*, 759 F.3d at 1014. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal citations and quotation marks omitted). "Second, if the claimant meets the first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (internal citations and quotation marks omitted).

An ALJ is not "required to believe every allegation of disabling pain." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). A claimant's credibility is most commonly called into question where her complaint is about "disabling pain that cannot be objectively ascertained." *Orn*, 495 F.3d at 637. "In weighing a claimant's credibility, the ALJ may consider [her] reputation for truthfulness, inconsistencies either in [her] testimony or between [her] testimony and [her] conduct, [her] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effects of the symptoms of which [she] complains." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). "To support a lack of credibility finding" about a claimant's subjective pain complaints, an ALJ must "point to specific facts which demonstrate that [the claimant] is in less pain than she claims." *Vasquez v. Astrue*, 572 F.3d 586, 591-92 (9th Cir. 2009) (internal citation and quotation omitted). In sum, the ALJ is required to (1) specify which testimony the ALJ finds not credible, and (2) provide clear and convincing reasons supported by the record for rejecting the claimant's subjective testimony. *See Brown-Hunter v. Colvin*, No. 13–15213, 2015 WL 6684997, at *1, *5 (9th Cir. 2015).

ii.    *Analysis*

The ALJ challenged Plaintiff's credibility on four grounds: (1) Plaintiff made inconsistent statements related to Plaintiff's education and drug use; (2) Plaintiff made inconsistent statements related to her activities of daily living; (3) there is an absence of medical evidence supporting her

23

1   statements about her mental disability; and (4) there is no treatment for Plaintiff's disabling mental

2   symptoms. (AR 31-32.) The ALJ did not provide clear and convincing reasons for rejecting

3   Plaintiff's testimony as not credible.

4       First, the ALJ incorrectly determined that Plaintiff's inconsistent statements related to her

5   education undermined her credibility. (AR 31.) The ALJ emphasized that when Plaintiff filed her

6   disability application she disclosed that her highest level of schooling was the ninth grade, but she

7   reported a tenth grade level education to Dr. Gaasbeek, and during a mental status evaluation she

8   reported that she received her GED. (*Id*.) These statements do not provide "clear and convincing

9   reasons" for rejecting Plaintiff's credibility because the statements are consistent with the record.

10  Plaintiff dropped out of the tenth grade and subsequently received her GED. (AR 482.) It is not

11  obvious that the "highest level of schooling" is a GED rather than the highest grade completed, or

12  that reporting one has a tenth grade education when she partially completed tenth grade is

13  inconsistent with reporting that the highest level of schooling is the level completed—ninth grade.

14      Further, Plaintiff's supposed confusion about her education is consistent with the

15  symptoms reported by her treating and examining physicians. Dr. Franklin reported that "she

16  exhibits confusion on questions," Lifelong Medical reported that she has "difficulty

17  concentrating," and Dr. Gaasbeek noted that her "thoughts were tangential" and she was "difficult

18  to redirect." (AR 489, 505, 389.)   Therefore, the alleged inconsistencies about her education is

19  not a "clear and convincing" reason for discrediting her testimony.

20      The ALJ also highlighted multiple inconsistent statements in the record related to

21  Plaintiff's alcohol and drug use. (AR 31.) According to Dr. Franklin's November 2014 report,

22  Plaintiff reported that she drinks 2-4 cans of beer daily, she "occasionally uses marijuana for

23  medicinal purposes," and the last time she used cocaine was 20 years ago. (AR 485.) In a

24  November 24, 2014 report from Lifelong Medical, Plaintiff reported drinking 3-4 beers a day,

25  using cocaine twice a month, smoking 1/3 pack a day for about 40 year, and smoking marijuana

26  daily (AR 497). Moreover, Dr. Gaasbeek wrote in his June 7, 2013 report that Plaintiff "reported

27  that she was addicted to cocaine in the late 1980s. She completed court-ordered rehabilitation.

28  She reported that she continues to smoke marijuana and drink beer on a daily basis." (AR 89.)

Here, Plaintiff's inconsistent account of her cocaine use is problematic, but it is not clear from the record that these contradictory statements are enough to discredit Plaintiff's entire testimony. In contrast to *Thomas*, where the Ninth Circuit agreed that the claimant was not credible because the claimant had not "been a reliable historian, presenting conflicting information about her drug and alcohol usage," here Plaintiff's other testimony with respect to her hallucinations, feelings of depression, and history of abuse are consistent across all of her medical records. *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002); AR 79, 388, 428, 437, 485, 495-504.

Second, the ALJ concluded that Plaintiff's inconsistent statements relative to her ability to function on a daily basis undermined her credibility. (AR 32.) The ALJ noted that Plaintiff testified that she performs no activities and generally just watches TV all day, but that Plaintiff also told Dr. Lewis that she can take care of her own personal needs and performs all household chores. (AR 32.) The ALJ also noted that Plaintiff told Dr. Gaasbeek that she stays in bed most of the day. (AR 32.) These statements, however, do not undermine Plaintiff's credibility because they are not necessarily inconsistent. Symptoms can range in their intensity and functional effects. Occasional periods without symptoms are not inconsistent with disability. *See Lester*, 81 F.3d at 833. Furthermore, completing basic chores and staying in bed the majority of the day are not mutually exclusive. Plaintiff reported to Dr. Gaasbeek that she "stays in bed most of the day, does not come out until the evening to go to the store for beer and food." (AR 389.) She also testified that she cleans herself "maybe once a week," does shopping "once a week," and does laundry "every couple months." (AR 65.) Thus, Plaintiff's statements about going to the store and cleaning are not necessarily inconsistent with her statements that she stays in bed most of the day.

Third, the ALJ found that the Plaintiff's complaints were "generally unsupported by the medical record." (AR 31.) As discussed above, Plaintiff's testimony as to her visual hallucinations and depression are corroborated by Dr. Franklin's objective psychiatric assessments. (AR 486-89.) Plaintiff's references to her auditory and visual hallucinations and depression are corroborated by Dr. Franklin's tests. (AR 488-90.) Dr. Franklin found that Plaintiff has "many of the physical and emotional symptoms of anxiety and depression." (AR 490.) Dr. Franklin further concluded:

Neuropsychological testing on this client indicates Ms. Ward is experiencing serious impairments in areas of executive functioning. It is likely these impairments are the direct result of intrusive emotional difficulties caused by the combination of an extensive history of trauma, the overwhelming loss of family members and close friends, and the significant stress associated with her housing and financial difficulties. Disordered thinking and visual/auditory hallucinations also likely impact Ms. Ward's executive functioning and processing skills.

(AR 492.)

Fourth, the ALJ concluded that Plaintiff lacks credibility because "[Plaintiff's] allegations relative to severe psychiatric symptomatology and associated functional limitations are not supported by her concurrent level of medical treatment." (AR 32.) The ALJ impermissibly faults Plaintiff for not seeking more treatment. The ALJ writes, "[W]hen examined by Dr. Gaasbeek, the claimant noted significant symptoms related to depression. However, despite such allegations of debilitating symptomatology, she further indicated that she was not taking any psychotropic medications at that time." (AR 32.) Yet, a claimant may not be faulted for failing to seek treatment, particularly when the claimant suffers from mental illness. *See Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299–300 (9th Cir. 1999) (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996)) ("we have particularly criticized the use of a lack of treatment to reject mental complaints both because mental illness is notoriously underreported and because 'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'")

Thus, the ALJ failed to provide clear and convincing reasons supported by the record for refusing to credit Plaintiff's testimony.

### 6.     Scope of Remand

Plaintiff asks the Court to remand for immediate benefits. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). However, a court may remand for an immediate award of benefits where "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence,

whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020.

Each part of this three-part standard must be satisfied for the court to remand for an award of benefits, *id.*, and "[i]t is the 'unusual case' that meets this standard." *Williams v. Colvin*, No. 12–CV6179, 2014 WL 957025, at *14 (N.D. Cal. Mar. 6, 2014) (quoting *Benecke*, 379 F.3d at 595). Moreover, if "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled," a court should remand for further proceedings "even though all conditions of the credit-as-true rule are satisfied." *Garrison*, 759 F.3d at 1021; *see also Treichler*, 775 F.3d at 1106 ("[A] reviewing court is not required to credit claimants' allegations regarding the extent of their impairments as true merely because the ALJ made a legal error in discrediting their testimony."). However, "an award under this rule is a rare exception, and the rule was intended to deter ALJs from providing boilerplate rejections without analysis." *Leon v. Berryhill*, No. 15-15277, 2017 WL 5150294, at *2 (9th Cir. Nov. 7, 2017). Indeed, "where ... an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency." *Id.* (citing *Treichler*, 775 F.3d at 1105).

The first part of the analysis asks whether the record has been fully developed, whether there are outstanding issues that must be resolved before a determination of disability can be made, and whether further administrative proceedings would be useful." *Id.* at *4. Here, remand is useful because questions exist regarding the extent of the severity of Plaintiff's schizoaffective disorder, posttraumatic stress disorder, and anxiety disorder. Second, the ALJ has failed to provide legally sufficient reasons for discrediting Dr. Franklin's medical opinion and allocating greater weight to the opinions of non-examining physicians.

Even if the record were fully developed and the improperly discredited evidence is credited as true, it is not certain that the ALJ would be required to find Plaintiff legally disabled under the third part of the credit-as-true standard. *Id.* at *4. Because the record creates doubts as to whether Plaintiff is in fact disabled, the rare circumstances that result in a direct award of benefits are not present in this case. *See id*. The Court thus declines to reach the credit-as-true rule and must

instead remand for further proceedings.

## CONCLUSION

For the reasons stated above, the Court GRANTS Plaintiff's Motion for Summary Judgment (Dkt. No. 15), DENIES Defendant's Cross-Motion for Summary Judgment (Dkt. 21). The Court VACATES the ALJ's final decision and REMANDS for reconsideration consistent with this order.

This Order terminates Docket Nos. 15 and 21.

**IT IS SO ORDERED.**

Dated: November 28, 2017

_Jacqueline Scott Corley_
JACQUELINE SCOTT CORLEY
United States Magistrate Judge